UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| IN RE GILBERTO T. AND SANDRA SALDIVAR | Case No. 11-10689 |

| | |
|---|---|
| GILBERTO T. SALDIVAR AND SANDRA SALDIVAR<br><br>VS.<br><br>JPMORGAN CHASE BANK, NA AND DEUTSCHE BANK NATIONAL TRUST COMPANY | Adversary No.<br><br>JURY DEMANDED |

## COMPLAINT

Gilberto T. Saldivar and Sandra Saldivar ("Plaintiffs" or "Debtors") file this Complaint and allege as follows:

### 1.0 JURISDICTION AND VENUE

1.1     Jurisdiction is conferred on this Court under 28 U.S.C. § 1334 in that this proceeding arises in and is related to the above-captioned Chapter 13 case and concerns property of the Debtors in that case.

1.2     This Court has both personal and subject matter jurisdiction to hear this case under 28 U.S.C. §§ 157(b)(2); 1334.

1.3     This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

1.4     This matter is a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order. However, in the unlikely event this case is determined to be a non-core

proceeding Debtor consents to the entry of a final order by the Bankruptcy Judge.

1.5     Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2).

## 2.0 Parties

2.1     Plaintiffs are debtors under Chapter 13 of the Bankruptcy Code in Case Number 11-10747. The bankruptcy case is pending in this Court.

2.2     JPMorgan Chase Bank, NA ("Chase") is an insured depository institution and has appeared in the bankruptcy proceeding through counsel. *See* Notice of Appearance, Dkt. #61. Plaintiffs will serve Chase's attorney pursuant to Fed. R. Bankr. P. 7004(h).

2.3     Deutsche Bank National Trust Company ("DBNTC") is a national banking association. The principal site of DBNTC's trust administration is located at 1761 East St. Andrew Place, Santa Ana, California 97025. Plaintiff will serve DBNTC Vice President Ronaldo Reyes via first class mail at that address.

## 3.0 Facts

A.     **Bankruptcy Procedural History**

3.1     Plaintiffs filed a Chapter 13 Petition on November 12, 2011.

3.2     The 341(a) meeting of creditors was held on December 22, 2011.

3.3     A Plan has not yet been confirmed, in part because of Chase's inflated claim.

B.     **Plaintiffs' Mortgage Transaction**

3.4     Plaintiffs refinanced their home on August 24, 2004 and granted a security interest in the property to Long Beach Mortgage Company.

3.5     Plaintiffs executed a Texas Home Equity note promising payments of $604.19 per

month to Long Beach Mortgage Company for principal and interest only.

3.6     From 2004 until 2009 Plaintiffs paid property taxes and insurance directly.

3.7     In 2010 and 2011 Chase advanced funds for force-placed insurance and property taxes.

3.8     While Plaintiffs did not directly pay property taxes in 2010, they did so in 2011, and are entitled to a refund for amounts advanced for taxes by Chase in 2011.

**C.     The Securitized Trust**

3.9     DBNTC is trustee for Long Beach Mortgage Loan Trust 2004-6 (the "Trust").

3.10    The Trust is a New York common law trust created through a Pooling and Servicing Agreement (the "PSA").

3.11    A copy of the PSA was filed under oath with the Securities Exchange Commission ("SEC") and is available online at http://www.sec.gov/Archives/edgar/data/1306775/000127727704000849/psa2004_6.pdf.

3.12    Under the PSA, loans were supposedly pooled into a trust and converted into mortgage-backed securities ("MBS") that could be bought and sold by investors. The loans were thus "securitized."

3.13    The PSA defines the rights, duties and obligations of the parties to the Trust Agreement.

3.14    The PSA provided that the "closing date" for the Trust was October 25, 2004.

3.15    The PSA provided that the "cut-off date" for the Trust was October 1, 2004.

3.16    The PSA also incorporates by reference a separate document called the Mortgage Loan Purchase Agreement ("MLPA").

3.17    These various documents, and hence the acquisition of the mortgage assets for the

Trust, are governed under the law of the State of New York pursuant to Section 11.04 of the PSA.

3.18    Section 11.04 of the PSA provides, "This Agreement shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the paties hereunder shall be determined in accordance with such laws."

3.19    The "Depositor" named in the PSA was Long Beach Securities Corp.

3.20    The "Master Servicer" and "Seller" named in the PSA was Long Beach Mortgage Company.

3.21    The "Trustee" named in the PSA was DBNTC.

3.22    The Trust, being sued through its trustee, is a New York Corporate Trust formed to act as a "REMIC" trust (defined below) pursuant to the U.S. Internal Revenue Code ("IRC").

3.23    Pursuant to the terms of the Trust and the applicable Internal Revenue Service ("IRS") regulations adopted and incorporated into the terms of the Trust, the "closing date" of the Trust is also the "startup day" for the Trust under the REMIC provisions of the IRC.

3.24    The startup day is significant because the IRC ties the limitations upon which a REMIC trust may be receive its assets to this date. The relevant portion of the IRC addressing the definition of a REMIC is:

> (a)    General rule. For purposes of this title, the terms 'real estate mortgage investment conduit' and 'REMIC' mean any entity—
>
> (1)    to which an election to be treated as a REMIC applies for the taxable year and all prior taxable years,
> (2)    all of the interests in which are regular interests or residual interests,
> (3)    which has 1 (and only 1) class of residual interests (and all distributions, if any, with respect to such interests are pro rata),
> (4)    as of the close of the 3rd month beginning after the startup day and at all times thereafter, substantially all of the assets of which consist of qualified mortgages and permitted investments.

26 U.S.C. § 860D.

3.25     The IRC also provides definitions of prohibited transactions and prohibited contributions which are relevant to this case as well. In the context of this case, the relevant statute is the definition of prohibited contributions which is as follows:

26 U.S.C. 860G(d)(1) states:

Except as provided in section 860G(d)(2), "if any amount is contributed to a REMIC after the startup day, there is hereby imposed a tax for the taxable year of the REMIC in which the contribution is received equal to 100 percent of the amount of such contribution."

26 U.S.C. 860G(d)(2) states:

(2)     Exceptions. Paragraph (1) shall not apply to any contribution which is made in cash and is described in any of the following subparagraphs:

(A)     Any contribution to facilitate a clean-up call (as defined in regulations) or a qualified liquidation.
(B)     Any payment in the nature of a guarantee.
(C)     Any contribution during the 3-month period beginning on the startup day.
(D)     Any contribution to a qualified reserve fund by any holder of a residual interest in the REMIC.
(E)     Any other contribution permitted in regulations.

3.26     The PSA (primarily in section 10.02) addresses these sections of the IRC by obliging the parties to the Trust to avoid any action which might jeopardize the tax status of any REMIC and/or impose any tax upon the Trust for prohibited contributions or prohibited transactions.

3.27     Section 10.02 of the PSA provides that the Trustee may not "accept any contributions to any Trust REMIC after the Closing Date" unless certain conditions are met.

3.28     These PSA provisions are important to the Court's analysis of the facts in this case because of the interplay between the New York trust law, the IRC's REMIC provisions, and the PSA's incorporation of the IRC REMIC provisions.

3.29     The terms of the PSA include a specific time, method and manner of funding the

Trust with its assets. The most critical time is the Trust's closing date. According to the terms of the PSA, all of the assets of the Trust were to be transferred to the Trust on or before the closing date. This requirement is to ensure that the Trust will receive REMIC status and thus be exempt from federal income taxation.

3.30   The PSA provides for a window of 90 days after the Trust closing date in which the Trust may complete any missing paperwork or finalize any documents necessary to complete the transfers of assets from the depositor to the Trust. Thus, for an asset to become an asset of the Trust it must have been transferred to the Trust within the time set forth in the PSA. The additional 90 days in the timeline requirement is incorporated from the REMIC provisions of the IRC to provide a "clean-up period" for a REMIC to complete the documents associated with the transfers of assets to a REMIC after the startup day (which is also the Trust closing date).

3.31   A trust's ability to transact is restricted to the actions authorized by its trust documents. In this case, the Trust documents permit only one specific method of transfer to the Trust. That method is set forth in Section 2.01 of the PSA.

3.32   A trust's ability to transact is restricted to the actions authorized by its trust documents. In this case, the Trust documents permit only one specific method of transfer to the Trust. That method is set forth in Section 2.01 of the PSA, and provides that the Depositor (Asset Backed Securities Corporation) was to convey the mortgages to the Trust.

3.33   Section 2.01 of the PSA required that the Depositor provide the Trustee with "the original Mortgage Note, endorsed in blank or in the following form: 'Pay to the order of Deutsche Bank National Trust Company, as Trustee under the applicable agreement, without recourse,' with all prior and intervening endorsements showing a complete chain of endorsement from the originator to the Person so endorsing to the Trustee..."

3.34    The PSA required the Trustee (DBNTC) to review the documents and certify that all of the documentation required by Section 2.01 had been provided by the depositor in 2004. Thus, if Plaintiff's mortgage loan was really assigned to the Trust, then the assignment would have had to have occurred in 2004, and DBNTC would have reviewed the documentation in 2004 and certified that the assignment was in its possession in 2004.

3.35    Moreover, if Plaintiff's mortgage loan was really assigned to the Trust, it would not have been assigned directly from Long Beach to DBNTC, but rather there would have been a series of assignments from Long Beach through intermediaries to the Depositor, and then from the Depositor to the Trust.

3.36    New York Estates Powers and Trusts Law section 7-2.1(c) authorizes a trustee to acquire property "in the name of the trust as such name is designated in the instrument creating said trust property." Thus, for transfer to an trustee to be effective, the property must be registered in the name of the trustee for the particular trust. Trust property cannot be held with incomplete endorsements and assignments that do not indicate that the property is held in trust by a trustee for a specific beneficiary trust. Under New York law an attempt to transfer to a trust which fails to specify both a trustee and a beneficiary is ineffective as a conveyance to the Trust. "The failure to name a beneficiary for the Trustee renders the assignment without merit."

3.37    The purported transfer to the Trust did not occur until 2011. The transfer is thus insufficient under New York trust law to assign anything to the Trust.

D.    **Force-Placed Insurance**

3.38    Part of the alleged arrearage claimed by Chase includes payments allegedly made for force-placed insurance.

3.39    Chase claims to have paid $4,888.10 for hazard insurance.

3.40	The premiums charged for the force-placed insurance were much higher than the premiums that would normally have been charged for similar coverage, even though force-placed insurance offers less benefits than normal insurance.

3.41	Upon information and belief, based on media reports, one of the reasons that force-placed insurance premiums are so much higher is that part of the cost of the premium is being paid back to Chase or an affiliated company. This payment is in the form of either a kickback or by allowing Chase (or a related entity) to serve as reinsurer.

3.42	The Texas Home Equity Security Lien Instrument did not authorize a lender or a servicer to covertly mark up the price of force-placed insurance.

E.	**The Proof of Claim**

3.43	Chase filed Proof of Claim 14 on June 15, 2012.

3.44	Chase claimed that six pre-petition monthly payments of $1,476.13 were due for a total of $8,856.78.

3.45	In fact, Plaintiffs' payments were only $604.19.

3.46	Chase asserts greater payments because of improperly force-placed insurance and

3.47	Upon information and belief, Chase's claimed inspection and appraisal fees were unnecessary and improperly marked up.

3.48	Chase attached an "escrow analysis" to its Proof of Claim. The analysis wrongly states that Chase paid Plaintiffs' property taxes in 2011.

3.49	By virtue of Chase's miscalculation, Chase is demanding more than is allowed under RESPA for Plaintiffs' escrow account.

## 4.0 FIRST CLAIM FOR RELIEF
### (Objection to Proof of Claim)

4.1     Pursuant to Fed. R. Bankr. P. 3007(b), Plaintiffs object to Chase's Proof of Claim.

2.2     Plaintiffs object to the Proof of Claim on the following grounds:

    A.     The total claim is overstated.

    B.     The claimed interest is overstated.

    C.     The fees, expenses and charges are overstated.

    D.     Chase failed to attach sufficient documentation to its Proof of Claim.

    E.     The documentation attached to the Proof of Claim does not meet the requirements of Fed. R. Bankr. P. 3001(c).

    F.     Plaintiff does not owe any money to Chase.

    G.     Chase's claim, to the extent it has one, is unsecured.

    H.     Chase has no standing to assert its Proof of Claim.

## 5.0 SECOND CLAIM FOR RELIEF
### (Texas Debt Collection Act)

5.1     Defendants' pre-Petition conduct in collecting the mortgage violated the Texas Debt Collection Act, Tex. Fin. Code §§ 392.301, *et seq*.

5.2     Specifically, Defendants misrepresented that they owned the loan they were attempting to collect, and misstated the amount of the debt.

## 6.0 THIRD CLAIM FOR RELIEF
### (Real Estate Settlement Procedures Act)

6.1     Chase effectively required deposits to an escrow account in violation of the Real

Estate Settlement Procedures Act , 12 U.S.C. §§ 2601, *et. seq.* ("RESPA") and its implementing regulations, commonly known as Regulation X.

6.2     Specifically, Chase violated the following regulations:

a.     12 C.F.R. § 1024.17(c)(ii) by charging sums in excess of the formula stated in the regulation; and

b.     12 C.F.R. § 1024.17(d) by failing to use the appropriate method to analyze Debtor's escrow account.

6.3     This claim is authorized under 12 U.S.C. § 2605(f)(1).

## 7.0 PRAYER

7.1     Plaintiffs respectfully ask that the Court grant Plaintiffs the following relief:

a.     All actual damages to which Plaintiffs are entitled;

b.     Exemplary damages;

c.     Attorney's fees and expenses;

d.     Disallowance of all overstated amounts in Chase's Proof of Claim;

e.     Damages for loss of credit reputation, past and future, and all other consequential damages; and

f.     All other relief to which Plaintiffs may show themselves entitled.

Respectfully submitted,

/s/ Michael J. Blanchard
Texas Bar No. 24036231
Federal ID 34400
THE COWEN LAW GROUP
62 E. Price Road
Brownsville, TX 78521
Telephone: (956) 541-4981
Facsimile: (956) 504-3674

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been delivered, in the required manner, to all counsel of record in accordance with the Federal Rules of Civil and Bankruptcy Procedure on September 27, 2012:

| | |
|---|---|
| Cindy Boudloche | 555 N. Carancahua, Suite 600<br>Corpus Christi, TX  78401 |
| Lance Erickson | McCarthy, Holthus & Ackerman, LLP<br>1255 W. 15th St.<br>Suite 1060<br>Plano, TX  75075 |
| Gilberto T. Saldivar | 417 Los Fresnos Ave<br>Santa Rosa, TX  78593 |
| Sandra Saldivar | P.O. Box 673<br>Santa Rosa, TX  78593 |
| Diane W. Sanders | Linebarger Goggan Blair & Sampson, LLP<br>P.O. Box 17428<br>Austin, TX  78760-7428 |
| Stephen Wilcox | Bassel & Wilcox, PLLC<br>P.O. Box 11509<br>Fort Worth, TX  76110-0509 |

/s/ Michael J. Blanchard