IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | |
| GILBERTO T. SALDIVAR, AND SANDRA SALDIVAR, | § § § | CASE NO. 11-10689 |
| DEBTORS | § § | |
| GILBERTO T. SALDIVAR, and SANDRA SALDIVAR<br>    PLAINTIFFS, | § § § § § | |
| vs. | § § | ADV. NO. 12-01010 |
| JPMORGAN CHASE BANK, N.A., and DEUTSCHE BANK NATIONAL TRUST COMPANY<br>    DEFENDANTS | § § § § § | |

### JPMORGAN CHASE BANK, N.A. AND DEUTSCHE BANK NATIONAL TRUST COMPANY'S JOINT REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS COMPLAINT

**TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE**

JPMorgan Chase Bank, N.A., ("JPMC") and Deutsche Bank National Trust Company ("Deutsche") (collectively, the "Defendants"), file this Reply to the Plaintiffs' Response to the Motion to Dismiss ("Motion") regarding certain claims asserted in the Plaintiffs' Complaint (the "Complaint") filed by Gilberto T. and Sandra Saldivar (the "Debtors" or "Plaintiffs") as follows:

1. **Request for Judicial Notice**

In determining the validity of a Rule 12(b)(6) motion, the Court may "consider matters of which [it] may take judicial notice." *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1017-18 (5th Cir.1996). Matters of public record and items appearing in the record of the case may also be considered. *Id.*; *see also Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. Jan. 25, 2011). The Fifth Circuit has also noted that documents attached to a motion to dismiss are considered

part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

Defendants request the Court take judicial notice of (1) the Defendants' Proof of Claim and all documents attached thereto which are in the public record by recording or by virtue of filing with this Court in the related bankruptcy case; (2) the Pooling and Servicing Agreement referenced by Plaintiffs in their Complaint which is on file with the Securities and Exchange Commission and publicly available at the link provided by Plaintiffs in the Complaint; and (3) The Purchase and Assumption Agreement between JPMC and the FDIC which is a matter of public record and is available at http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf. All of these documents listed above are attached hereto and incorporated herein by reference.

## 2. **Plaintiffs lack standing to challenge the assignment of the mortgage**

Plaintiffs' response to Defendants' argument and case law that Plaintiffs lack standing to challenge the pooling and servicing agreement ("PSA") and the securitization transaction regarding their mortgage in general is to claim that they are only challenging the Assignment of the mortgage and are using the PSA as evidence that the Assignment is invalid. *See* Plaintiffs' Response (Docket No. 13), pg. 4, para. 4.6. This is a false distinction.

First, Plaintiffs' challenge to the Assignment of the mortgage is that the Assignment is invalid because it was not carried out in accordance with the PSA. Indeed, the majority of Plaintiffs' Complaint is an explanation of particular clauses in the PSA and how the Assignment allegedly does not comport with the PSA's requirements. However, it is clear the Plaintiffs

cannot carry out their challenge and prove their case that the Assignment is not valid unless they can enforce the terms of the PSA, which they have no right or standing to do.

It is fundamental contract law in both New York and Texas that only a party to the contract or a third party beneficiary may enforce such contract. *See S. Texas Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007); *Logan-Baldwin v. L.S.M. Gen. Contractors, Inc.,* 914 N.Y.S.2d 617, 621 (Sup. Ct. 2011) *aff'd as modified,* 942 N.Y.S.2d 718 (2012). Similarly, under New York law, Plaintiffs have no standing to challenge the securitized trust because they are not beneficiaries of the trust. New York courts refuse litigants who are not beneficiaries standing to enforce the terms of trusts. *See In re Estate of McManus,* 47 N.Y.2d 717, 417 N.Y.S.2d 55, 390 N.E.2d 773, 774 (1979) (determining that those "not beneficially interested" in a trust lacked standing to challenge the actions of the trustee); *Cashman v. Petrie,* 14 N.Y.2d 426, 252 N.Y.S.2d 447, 201 N.E.2d 24, 26 (1964) (finding that litigant who was not a beneficiary could not sue to enforce a trust); *Naversen v. Gaillard,* 38 A.D.3d 509, 509, 831 N.Y.S.2d 258 (N.Y.App.Div. 3rd Dep't 2007) (affirming lower court determination that "since the defendants were not beneficiaries of the [trust], they lacked standing to challenge the actions of the plaintiff as its trustee"). *See also*, *In re 1031 Tax Group, LLC*, 439 B.R. 47, 64-67 *supplemented,* 439 B.R. 78 (Bankr. S.D.N.Y. 2010). The cases cited in Defendants' Motion that denied borrowers' challenges to the securitization of their mortgage are based upon these well-settled principles of law.

Second, even independent of the Plaintiffs' challenge to the PSA, the Plaintiffs lack standing to challenge any assignment itself. In Texas, obligors on the debt may only defend against an assignee's affirmative claims to collect the debt on grounds that render an assignment absolutely void, as opposed to voidable, thus giving rise to a risk of having to pay the debt twice.

*Tri-Cities Const., Inc. v. Am. Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App. 1975); *Ifert v. Miller,* 138 B.R. 159, 165 (E.D. Pa. 1992) *aff'd,* 981 F.2d 1247 (3d Cir. 1992) (construing Texas law and stating "while the law permits the obligor to raise as a defense against the assignee the fact that the assignment contract between the assignor and the assignee was void, it does not permit the obligor to raise, as a defense, the claim that the assignment contract between the assignor and the assignee is voidable [.]").

Circumstances that render an assignment absolutely void include non-assignability of the right attempted to be assigned or prior revocation of the assignment. *See Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 Fed. Appx. 97, 102 (6th Cir. 2010) (explaining that defenses that render an assignment absolutely void include "include nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment") (citing 6A C.J.S. Assignment § 132). As stated in *Tri-Cities*, an obligor may raise the defense that assignment is void but not voidable because only right obligor has to challenge assignment is to ensure he does not have to pay the same debt twice.

First, Defendants here have not brought suit against the Plaintiffs. Therefore, Plaintiffs cannot avail themselves of even the argument that the assignment may be void. *See Kramer v. Fed. Nat. Mortg. Ass'n*, A-12-CA-276-SS, 2012 WL 3027990, *3-7 (W.D. Tex. May 15, 2012). Even if such challenge could be raised, Plaintiffs here do not allege that their loan is not assignable, or that the assignment was revoked. In fact, the documents are assignable according to their clearly stated terms. *See* Home Equity Security Instrument attached to the Proof of Claim Number 14 of Defendants ("Deed of Trust") and attached hereto for convenience as Exhibit "A", pg. 5, para. 18. Further, Plaintiffs do not allege, nor is there any proof, that the parties to the assignment question its validity, or that Plaintiffs have been faced with conflicting claims of

ownership of their debt. Indeed, Plaintiffs are debtors in a chapter 13 bankruptcy case where they are required to list all creditors whether the Plaintiffs admit they owe the debt to the creditor or the debt or rights of the creditor to collect are disputed. Despite the Plaintiffs presumably listing any party that may claim a right to collect their mortgage on their schedules, there are no competing claims to the mortgage. Furthermore, Plaintiffs have sued in this adversary proceeding only JPMC and Deutsche, and admit that Deutsche claims to be the owner and holder of the debt and JPMC the servicer on Deutsche's behalf. Again, there is no allegation of any competing claims.

Finally, as conceded in Plaintiffs' Complaint and as is evident from the face of the document, the note at issue is a Home Equity Note under Article XVI, Section 50(a)(6) of the Texas Constitution which is non-recourse such that the Plaintiffs have no personal liability for the debt and only the property is liable. *See* Texas Home Equity Note ("Note") attached to JPMC Proof of Claim No. 14 and attached hereto for ease of reference as Exhibit "B"; and Art. XVI, Sec. 50(a)(6) Tex. Const. Since the debt is non-recourse, there is no way the Plaintiffs could possibly be in danger of paying it twice. Thus, the Plaintiffs did not allege any "defenses" that render the assignment void, giving rise to the possibility of having to pay the debt twice.

### 3. The Plaintiffs' own Complaint establishes Defendants' standing to enforce the debt and file the proof of claim.

Plaintiffs are correct in their Response that Defendants do not seek dismissal in full of the objection to Defendants' proof of claim in the bankruptcy case, however, to the extent the objection to claim is based upon a challenge to the PSA or a claim that Defendants lack standing to file the proof of claim, such cause of action should be dismissed under Rule 12(b)(6) because Plaintiffs do not have standing to challenge the PSA or the Assignment and Defendants' standing

is demonstrated by the documents referred to in Plaintiffs' Complaint or attached to the Proof of Claim.

Regarding the objection to the proof of claim, the Complaint states "Plaintiff does not owe any money to Chase;" "Chase's claim, to the extent it has one, is unsecured;" "Chase has no standing to assert its Proof of Claim." *See* Complaint para. 4.2. Plaintiffs' basis to assert they do not owe money to JPMC or that JPMC's claim is unsecured appear to clearly be based upon the challenge to the PSA and the Assignment, which is addressed above and in Defendants' Motion. Similarly, Plaintiffs' lack of standing claim is also apparently based in part upon such arguments.

The Plaintiffs refer to the Pooling and Servicing Agreement in paragraph 3.26 of the Amended Complaint (para. 3.11 in the original Complaint) which is available from the Securities and Exchange Commission website and is attached hereto as Exhibit "C" for the Court's convenience. On Page 11 of the PSA, in subpart xxii of Section 6, the PSA states that each mortgage loan being transferred to Deutsche as trustee for the pool pursuant to the PSA "is currently being serviced by Washington Mutual Bank, FA." JPMC acquired all of Washington Mutual's servicing rights from the Federal Deposit Insurance Corporation acting as receiver for Washington Mutual pursuant to the Purchase and Assumption Agreement dated as of September 25, 2008 among the Federal Deposit Insurance Corporation, Receiver of Washington Mutual Bank, Henderson, Nevada, Chase, and the Federal Deposit Insurance Corporation. *See* Exhibit "D." In other words, according to Plaintiffs' own evidence, JPMC is the servicer of Plaintiffs' mortgage.

### 4. <u>An executed, recorded Assignment of the Mortgage is not necessary</u>.

Even if there were some infirmity in the Assignment of the mortgage, which Plaintiffs do not allege other than due to the allegedly failed requirements of the PSA, no written, executed,

recorded assignment of the mortgage is necessary at all to transfer the note and deed of trust or to comply with the PSA.

The endorsement of the note also transfers the deed of trust. *Kirby Lumber Corp. v. Williams*, 230 F.2d 330 (5th Cir. 1956) ("The rule is fully recognized in this state that a mortgage to secure a negotiable promissory note is merely an incident to the debt, and passes by assignment or transfer of the note. . . . The note and mortgage are inseparable.)"; *West v. First Baptist Church of Taft*, 71 S.W. 2d 1090, 1098 (Tex. 1934) ) ("The trial court's finding and conclusion ignore the settled principle that a mortgage securing a negotiable note is but an incident to the note and partakes of its negotiable character. . . .'The note and mortgage are inseparable; the former as essential, the latter as an incident.'" (quoting *Carpenter*).  The *West* case goes on to state that the mortgage securing the negotiable note (i.e., the deed of trust), is but an incident to the note "and partakes of its negotiable character."

The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity. *Carpenter v. Longan*, 83 U.S. 271, 274, 21 L. Ed. 313 (1872) (footnote omitted). This basic proposition has often been reaffirmed in several cases. *See Baldwin v. Missouri*, 281 U.S. 586, 596, 50 S. Ct. 436, 74 L. Ed. 1056 (1930) (Stone, J., concurring); *National Live Stock Bank v. First Nat'l Bank*, 203 U.S. 296, 306, 27 S. Ct. 79, 51 L. Ed. 192 (1906); *Kirby Lumber*, 230 F.2d at 336; *In re Veal*, 450 B.R. 897, 916-17 (B.A.P. 9th Cir. 2011); *In re Vargas*, 396 B.R. 511, 516 (Bankr. C.D. Cal. 2008); *In re Leisure Time Sports, Inc.*, 194 B.R. 859, 861 (B.A.P. 9th Cir. 1996); *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo. Ct. App. E.D. 2009).

Accordingly, since the deed of trust was transferred when the note was endorsed, the Assignment about which Plaintiffs complain was not necessary and therefore cannot somehow undo the transfer of the note by endorsement or cause the transfer of the mortgage to be in violation of the PSA.

Indeed, contrary to Plaintiffs' allegations, the PSA does not necessarily require there be a recorded Assignment. In Section 2.01, below where Plaintiffs cite, the PSA provides in relevant part:

> Notwithstanding the foregoing, the Assignments shall not be required to be completed and submitted for recording with respect to any Mortgage Loan if each Rating Agency does not require recordation … provided, however, each Assignment shall be submitted for recording by the Master Servicer, in its capacity as Seller, in the manner described above, at no expense to the Trust Fund or the Trustee, upon the earliest to occur of: (i) reasonable direction by Holders of Certificates entitled to at least 25% of the Voting Rights, (ii) the occurrence of a Master Servicer Event of Default, (iii) the occurrence of a bankruptcy, insolvency or foreclosure relating to the Seller, (iv) the occurrence of a servicing transfer as described in Section 7.02 hereof and (v) if the Seller is not the Master Servicer and with respect to any one Assignment, the occurrence of a bankruptcy, insolvency or foreclosure relating to the Mortgagor under the related Mortgage.

See Ex. "C", PSA, pg. 60 Sec. 2.01(f).

As stated above, an executed, recorded assignment of the mortgage is not required where the Rating Agency does not require recordation. Since an executed, recorded assignment is not required by Texas law to transfer the loan, it would appear consistent that such an assignment is not required by any Rating Agency and therefore not a requirement of the PSA.

In addition, as quoted in Plaintiffs' proposed Amended Complaint at paragraph 3.48, the note need not be endorsed specially to Deutsche, but instead can be endorsed in blank. Although it is admittedly difficult to fully make out the endorsement on the copy of the note attached to the Proof of Claim, it does appear to be endorsed in blank in

**REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS**                                        Page | 8

satisfaction of Section 2.01 of the PSA as well as the Uniform Commercial Code. With that endorsement, the mortgage was transferred and therefore the date on the Assignment is irrelevant and the Assignment itself is irrelevant in its entirety.

### 5. The Complaint fails to establish that Defendants are debt collectors

The standard for whether a party is a debt collector under the Texas Debt Collection Practices Act is set forth in Defendants' Motion. The Response of Plaintiffs provides no contrary legal citation and merely argues that Defendants "cannot say with straight faces that they neither directly nor indirectly engage in debt collection" but offers no more argument or basis for the claim other than what is in the Complaint. As set forth in Defendants' Motion, courts interpret the term "debt collector" to include both third-party debt collectors and creditors collecting their own debts. Plaintiffs do not assert Defendants originated their loan. As stated in the Complaint, Plaintiffs allege the loan was originated by Long Beach Mortgage Company. Complaint, para. 3.4 and 3.5. Therefore, Defendants can only be held liable as a "debt collector" under the TDCA if they fit within the statute's definition of a "third-party debt collector."

The definition of "third-party debt collector" in the Texas Finance Code tracks the definition of "debt collector" in the Fair Debt Collection Practices Act ("FDCA"). *VanHauen v. Am. Home Mortg. Servicing, Inc.*, 4:11-CV-461, 2012 WL 874330 (E.D. Tex. Feb. 17, 2012), *report and recommendation adopted*, 4:11-CV-461, 2012 WL 874328 (E.D. Tex. Mar. 14, 2012). Therefore, "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Id.* (citation omitted). Plaintiffs do not allege they were in default at the time the loan was assigned to Defendants.

In addition, to the extent Plaintiffs' TDCA claims are based upon the argument that Defendants are not actually creditors of the Plaintiffs because of a failure under the PSA or a technical infirmity in the Assignment, those claims should be dismissed for a lack of standing.

6. **Plaintiffs continue to lack any plausible basis for claims under RESPA relating to the lender placed insurance or any claim Defendants are not the actual creditors**

As set forth in the Motion, the only basis Plaintiffs have to assert the Defendants allegedly received "kickbacks" from the lender placed insurance is media articles. However, the media articles cited by Plaintiffs state only that there are investigations by governmental bodies into whether there were any illegal practices by JPMC among other large lenders. *See* Response pg. 8, para. 4.18. In other words, Plaintiffs have nothing more than allegations made by other parties based upon specific factual scenarios that are not this case under law in other states. Conjecture based upon allegations in unrelated cases in other jurisdictions is not sufficient to avoid dismissal under Rule 12(b)(6).

The only other stated basis for the Plaintiffs' claims regarding alleged "kickbacks" is that lender placed insurance is more expensive. However, it is more plausible that lender placed coverage is more expensive because of other circumstances under which it is purchased such as it may provide insurance during a past period where insurance was not otherwise in place and claims may already exist. In other words, the Plaintiffs have no facts to support their claim and it clearly does not meet the plausibility test.

As argued in the Motion, to the extent any other RESPA claims are based upon allegations that Defendants are not the actual creditors because of challenges to the

Assignment or the PSA, Plaintiffs have no standing to assert such challenges and therefore cannot bootstrap their way into claims under RESPA on such challenges. Therefore, those claims should also be dismissed.

### 7. Plaintiffs fail to allege sufficient facts for claim under the TDCA or RESPA related to the Notice of Default

As set forth in Defendants' Motion, it appears Plaintiffs' claims for violation of the TDCA and RESPA are primarily, if not exclusively, based upon the Defendants' Proof of Claim and therefore should be dismissed. Also, Plaintiffs have failed to allege facts supporting the conclusion that Defendants are debt collectors under the TDCA as set forth above and in the Defendants' Motion. In addition, Plaintiffs assert in the proposed Amended Complaint that Defendants sent a Notice of Default dated September 26, 2011, which the Plaintiffs do not attach to their pleadings. Purportedly, the Notice of Default contains a cure amount, which the Plaintiffs contest. To the extent Plaintiffs assert the Notice of Default violates the TDCA or RESPA because Defendants are not the true creditors, such claims are based upon the Plaintiffs' challenge to the PSA and the Assignment for which they have no standing to maintain as set forth above and in the Motion such that such claims under the TDCA or RESPA should be dismissed.

WHEFORE, PREMISES CONSIDERED, Defendants request that this Court dismiss Plaintiffs' claims challenging the Pooling and Servicing Agreement or the Assignment of the mortgage, including Plaintiffs' Objection to Claim relying upon such challenges, and further dismiss Plaintiffs' claims for violation of the Texas Debt Collection Practices Act and the Real Estate Settlement Procedures Act with prejudice, or alternatively, order Plaintiffs replead their claims, and further grant Defendants such other and further relief to which they may be justly entitled.

                Respectfully submitted,

                QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
                Bryan Tower
                2001 Bryan Street, Suite 1800
                Dallas, Texas  75201-4240
                (214) 871-2100 (Telephone)
                (214) 871-2111 (Facsimile)

By:  /s/ *Timothy A. York*
        Wm. Lance Lewis
        State Bar No. 12314560
        Timothy A. York
        State Bar No. 24035719

**Attorneys for JPMorgan Chase Bank, N.A. and Deutsche Bank National Trust Company**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF notification system upon all parties receiving the same, and via First Class Mail upon the following on this 13th day of December, 2012:

Michael Blanchard
The Cowen Law Group
62 E. Price Road
Brownsville, Texas 78521

                 /s/ *Timothy A. York*
                Timothy A. York