

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ENTERED
06/05/2013

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 11-10689 |
| GILBERTO SALDIVAR, SANDRA | § | CHAPTER 13 |
| CANALES SALDIVAR, | § | |
| | § | |
| Debtor(s). | § | JUDGE ISGUR |
| | § | |
| | § | |
| GILBERTO T SALDIVAR, *et al* | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | ADVERSARY NO. 12-01010 |
| | § | |
| JPMORGAN CHASE BANK, N.A., *et al* | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

Defendants, JPMorgan Chase Bank, N.A. ("Chase") and Deutsche Bank National Trust Company's ("Deutsche Bank"), Joint Motion to Dismiss Complaint, (ECF No. 9) is granted, in part, and denied, in part.

### Background

Plaintiffs are Debtors, Gilberto and Sandra Saldivar. The Saldivars filed a voluntary chapter 13 petition on November 12, 2011. Case No. 11-10689, ECF No. 1. The Saldivars filed this adversary proceeding on September 26, 2012. ECF No. 1. Chase and Deutsche Bank filed their Joint Motion to Dismiss Complaint on October 18, 2012. ECF No. 9. The Saldivars filed their Response to Defendant's Motion to Dismiss on November 29, 2012. ECF No. 13. The Saldivars filed a Supplemental Response to Defendants Motion to Dismiss on December 4, 2012. ECF No. 14. Chase and Deutsche Bank filed their Joint Reply to Plaintiffs' Response to Motion to Dismiss Complaint on December 13, 2012. ECF No. 15. The Saldivars filed their First Amended Complaint

on February 25, 2013. ECF No. 19. Chase and Deutsche Bank filed their Joint Conditional Answer to Plaintiffs' First Amended Complaint on March 11, 2013. ECF No. 22.

The Saldivars refinanced their home on August 24, 2004, and granted a security interest in the property to Long Beach Mortgage Company. ECF No. 19 at 2. The Saldivars executed a Texas Home Equity Note, (the "Note"), promising payments of $604.19 per month to Long Beach Mortgage Company for principal and interest only. ECF No. 19 at 2. From 2004 until 2009, the Saldivars paid property taxes and insurance directly. ECF No. 19 at 2. In 2010 and 2011, Chase advanced funds for force-placed insurance and property taxes. ECF No. 19 at 2. The Saldivars did not pay property taxes in 2010, but did pay taxes directly in 2011, and allege they are entitled to a refund for amounts advanced by Chase in 2011. ECF No. 19 at 2.

On September 26, 2011, the Saldivars received a Notice of Default on behalf of Chase, effective June 1, 2011, demanding $8,127.11 to cure the default. ECF No. 19 at 2-3. The Notice of Default indicated that the cure amount included late charges, periodic adjustments to the payment amount (if applicable), legal fees and expenses of collection. ECF No. 19 at 2. The Saldivars allege that the cure amount included unauthorized fees and charges. ECF No. 19 at 3. The Saldivars' contract payment was only $604.19 per month, therefore they argue that the cure amount should have been no greater than $2,416.76 ($604.19 x 4 months). ECF No. 19 at 3. The Saldivars allege that the $8,127.11 cure amount included amounts paid for 2011 taxes that were, in fact paid directly by the Saldivars. ECF No. 19 at 3.

### The Securitized Trust

The Notice of Default indicates that the original creditor is Deutsche Bank, as Trustee for Long Beach Mortgage Loan Trust 2004-6. ECF No. 19 at 3. The Trust is a New York common law trust created through a Pooling and Servicing Agreement (the "PSA"). ECF No. 19 at 4. Under the PSA, loans were purportedly pooled into a trust and converted into mortgage-backed securities.

ECF No. 19 at 4. The PSA provides a closing date for the Trust of October 25, 2004. ECF No. 19 at 4. As set forth below, this was the date on which all assets were required to be deposited into the Trust. The PSA provides that New York law governs the acquisition of mortgage assets for the Trust. ECF No. 19 at 4

The Trust was formed as a REMIC trust.[1] ECF No. 19 at 5. Under the REMIC provisions of the Internal Revenue Code ("IRC") the closing date of the Trust is also the startup day for the Trust. ECF No. 19 at 5. The closing date/startup day is significant because all assets of the Trust were to be transferred to the Trust on or before the closing date to ensure that the Trust received its REMIC status. ECF No. 19 at 6. The IRC provides in pertinent part that:

> "Except as provided in section 860G(d)(2), 'if any amount is contributed to a REMIC after the startup day, there is hereby imposed a tax for the taxable year of the REMIC in which the contribution is received equal to 100 percent of the amount of such contribution."

26 U.S.C. § 860G(d)(1).

A trust's ability to transact is restricted to the actions authorized by its trust documents. ECF No. 19 at 6. The Saldivars allege that here, the Trust documents permit only one specific method of transfer to the Trust, set forth in § 2.01 of the PSA. ECF No. 19 at 6. Section 2.01 requires the Depositor to provide the Trustee with the original Mortgage Note, endorsed in blank or endorsed with the following: "Pay to the order of Deutsche Bank, as Trustee under the applicable agreement, without recourse." ECF No. 19 at 7. All prior and intervening endorsements must show a complete chain of endorsement from the originator to the Trustee. ECF No. 19 at 7.

Under New York Estates Powers and Trusts Law § 7-2.1(c), property must be registered in the name of the trustee for a particular trust in order for transfer to the trustee to be effective.

---

[1] The Internal Revenue Code provides that the terms 'real estate mortgage investment conduit' and 'REMIC' mean any entity—(1) to which an election to be treated as a REMIC applies for the taxable year and all prior taxable years, (2) all of the interests in which are regular interests or residual interests, (3) which has 1 (and only 1) class of residual interests (and all distributions, if any, with respect to such interests are pro rata), (4) as of the close of the 3rd month beginning after the startup day and at all times thereafter, substantially all of the assets of which consist of qualified mortgages and permitted investments. ECF No. 19 at 5.

ECF No. 19 at 7.  Trust property cannot be held with incomplete endorsements and assignments that do not indicate that the property is held in trust by a trustee for a specific beneficiary trust.  ECF No. 19 at 7.

The Saldivars allege that the Note was not transferred to the Trust until 2011, resulting in an invalid assignment of the Note to the Trust.  ECF No. 19 at 7.  The Saldivars allege that this defect means that Deutsche Bank and Chase are not valid Note Holders.  ECF No. 19 at 3.

In its Motion to Dismiss, (ECF No. 9), Chase and Deutsche Bank argue that the Saldivars lack standing to challenge the validity of the assignment to the trust.  At the hearing on January 28, 2013, the Court stated that the law is well settled that the Saldivars do not have standing to complain about the Trust's failure to follow its own internal procedures.  However, if the assignment was void, *ab initio*, because it occurred after the closing date, the Saldivars do have a valid argument that Chase and Deutsche Bank are not valid Note Holders.  The Court ordered additional briefing on whether under New York law, failure to comply with the terms of the PSA rendered assignment to the trust void, *ab initio*; or, merely voidable.

The Court also ordered supplemental briefing on whether Texas Local Government Code § 192.007 requires an assignment of a note to be recorded.

The parties submitted contemporaneous supplemental briefs on February 28, 2013.  ECF Nos. 20 & 21.  Chase and Deutsche Bank submitted their reply on March 14, 2013.  ECF No. 23.  The Saldivars submitted their reply on March 15, 2013.  ECF No. 24.

**Force-Placed Insurance**

Chase's arrearage claim includes $4,888.10 for force-placed hazard insurance.  ECF No. 19 at 8.  The Saldivars allege that the premiums charged for this force-placed insurance were significantly higher than average premiums for similar coverage.  ECF No. 19 at 8.  The Saldivars allege that the inflated premiums result from the fact that a portion of the premium is being

paid to Chase or an affiliated company in the form of a kickback. The Saldivars point to two articles, one from the Chicago Tribune, *Force-placed insurance, an unnecessary burden for trapped mortgage borrowers*; and, one from the New York Times, *Big Banks Face Inquiries Over Home Insurance*, as evidence that Chase received kickbacks on force-placed insurance transactions.[2] ECF No. 13 at 8.

### Chase's Proof of Claim

Chase filed Proof of Claim 14 on June 15, 2012, claiming six pre-petition monthly payments of $1,476.13 were due for a total of $8,856.78. ECF No. 19 at 8. The Saldivars allege that their monthly payments were only $604.19. ECF No. 19 at 8. They allege that Chase's inflated proof of claim is a result of improperly force-placed insurance; taxes for 2011 that Chase improperly paid; and inflated inspection and appraisal fees. ECF No. 19 at 8. The Saldivars assert that Chase's escrow analysis attached to its proof of claim is incorrect because it includes property taxes for 2011.

### Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

### Analysis

### Rule 12(b)(6) Standard

The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). However, the Court "will not strain to find inferences favorable to the

---

[2] Of course, these newspaper articles do not constitute evidence. They *may* constitute a sufficient basis for considering whether a plausible claim is being asserted for which discovery should be allowed.

plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Ashcroft v. Iqbal,* the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the Plaintiffs' grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

### Standing

As a threshold matter, the Court must first address Chase and Deutsche Bank's assertion that the Saldivars lack standing to challenge the validity of the assignment of their mortgage to the Trust.

**A. Under New York Trust Law, is an *ultra vires* act void or merely voidable?**

A third party generally lacks standing to challenge the validity of an assignment. *Bank of American Nat'l Assoc. v. Bassman FBT, L.L.C., et al.* 981 N.E.2d 1, 7 (Ill. App. Ct. 2012). A borrower may however raise a defense to an assignment, if that defense renders the assignment void. *Id*.

> The parties agree that under New York Trust Law the relevant statute provides the following: "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void."

N.Y. Est. Powers & Trusts Law § 7-2.4. The *Bassman* court holds that despite the plain language of § 7-2.4, under various circumstances a trustee's *ultra vires* acts are voidable and not void. *Bassman*, 981 N.E.2d. at 9. The *Bassman* court cites New York cases that hold that beneficiaries of a trust can ratify a trustee's *ultra vires* acts. *See Gregan v. Buchanan, et al*, 37 N.Y.S. 83, 85 (N.Y. Sup. Ct. 1896); *see also Hine v. Huntington, et al.* 103 N.Y.S. 535, 540 (N.Y. App. Div. 1907); *Birnbaum v. Birnbaum, et al*., 503 N.Y.S.2d 451 (N.Y. App. Div. 1986). The *Bassman* court holds that the ability to ratify a trustee's *ultra vires* act is equivalent to finding that a trustee's *ultra vires* act is merely voidable and not void.

Under 28 U.S.C. § 1652, this Court has the duty to apply New York law in accordance with the controlling decision of the highest state court. *Royal Bank of Canada v. Trentham Corp.*, 665 F.2d 515, 516 (5th Cir. 1981). While the Court finds no applicable New York Court of Appeals decision, a recent New York Supreme Court decision is factually similar to the case before the Court. *See Wells Fargo Bank, N.A. v. Erobobo, et al.*, 2013 WL 1831799 (N.Y. Sup. Ct. April 29, 2013). In *Erobobo*, defendants argued that plaintiff (a REMIC trust) was not the owner of the note because plaintiff obtained the note and mortgage after the trust had closed in violation of the terms of the PSA governing the trust, rendering plaintiff's acquisition of the note void. *Id*. at *2. The *Erobobo* court held that under § 7-2.4, any conveyance in contravention of the PSA is void; this meant that acceptance of the note and mortgage by the trustee after the date the trust closed rendered the transfer void. *Id*. at 8.

Based on the *Erobobo* decision and the plain language of N.Y. Est. Powers & Trusts Law § 7-2.4, the Court finds that under New York law, assignment of the Saldivars' Note after the start up day is void *ab initio*. As such, none of the Saldivars' claims will be dismissed for lack of standing. The Court expresses no view on the effect of any subsequent ratification, if any. It is sufficient that a claim has been stated.

The Saldivars have pled facts sufficient to withstand dismissal on whether the transfer to the Trust was void *ab initio*. The Saldivars allege that assignment occurred in 2011—several years after the startup day. If this proves true, Chase may not be the owner of the Note.

**B. Does Tex. Local Gov't Code § 192.007 require recordation of mortgage assignment?**

Texas Local Government Code section 192.007 provides:

> "To release, transfer, assign, or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as the original instrument as required to be filed, registered or recorded."

Here the security instrument was filed and recorded with Cameron County on August 31, 2004. ECF No. 21-4. The Saldivars cite to *Miller v. Homecomings Financial, LLC, et al.*, which holds that a transfer or assignment of a recorded mortgage must also be recorded in the office of the county clerk. 881 F.Supp.2d 825, 830 (S.D. Tex. 2012).

In *Richard v. CIT Group*, the court held that even assuming a violation of 192.007 in assigning the deed-of-trust lien, the homeowner did not have standing to complain because she was not a party to the assignment, nor was she injured by the assignment or a lack of recordation. 2012 WL 3030348, at *2. The parties to a land transaction are not obliged to record anything. *Id*. Notes are transferred by endorsement not by a deed. *Id*. The power to foreclose does not arise from the public record, but from holding the note. *Id*.

This Court has also found that under §192.007, the absence of recordation does not affect the validity of the assigned deed of trust between the homeowner and the lender. *Hill v. U.S. Bank, Nat'l Assoc., et al. (In re Perry)*, 2013 WL 504859, at *3 (Bankr. S.D. Tex. Feb. 8, 2013).

In *Perry* the Court also cites *In re Hamilton*, where the Fifth Circuit held that a chapter 13 debtor, acting with trustee powers,[3] seeking to avoid a prepetition, unrecorded transfer was charged

---

[3] Here the Saldivars may act with trustee powers pursuant to 11 U.S.C. §522(h).

8 / 11

with inquiry notice of the transfer. *Id*. at *3. If the Saldivars were merely bringing a state-law suit against Chase, *Richard v. CIT Group* would control. Because the Saldivars may act with trustee powers, the issue is whether the Estate, as a hypothetical bona fide purchaser for value, would have discovered the assignment following reasonable inquiry. That is a factual issue that must be tried.

## Causes of Action

### A. Objection to Proof of Claim

Chase and Deutsche Bank's motion to dismiss the Saldivars' objection to Chase's proof of claim is granted, in part, and denied, in part. The Saldivars have asserted sufficient facts to support the assertion that Chase's claim is overstated. They assert that the proof of claim is overstated due to forced-placed insurance. They allege that the premium on the force-placed insurance is inflated because Chase, or an affiliated insurance company, receives a portion of the premium as a kickback. The Saldivars cite to two articles containing the allegations, and these facts are sufficient to withstand dismissal.[4]

The Saldivars allege that their monthly payments were only $604.19, not $1,476.13 as stated in Chase's Proof of Claim. They assert that the discrepancy is based on the fact that while they paid property taxes in 2011, Chase still charged them for 2011 property taxes as reflected in the escrow analysis attached to the proof of claim. The Saldivars' Deed of Trust allows the lender to maintain an escrow account with funds for taxes and insurance. The Loan History attached to Chase's Proof of Claim reflects that an escrow account was established pursuant to the Deed of Trust. The Saldivars do not have a claim against Chase for property taxes paid in 2011 as such taxes were

---

[4] The Court recognizes that these newspaper articles are inadmissible as hearsay. However reliance on the articles at the 12(b)(6) stage is acceptable because the hearsay is not being introduced to establish the truth of the Saldivars claim, but to show the reasonableness of their belief, and provide justification for their request for additional information. *See N.L.R.B. v. PDK Investments, L.L.C.*, 433 Fed.Appx. 297, 302 (5th Cir. 2011).

properly escrowed.[5] The Saldivars additionally provide no factual basis for the assertion that Chase's proof of claim includes inflated inspection and appraisal fees. These claims are dismissed for failure to state a claim under Rule 12(b)(6).

### B. Texas Debt Collection Act ("TDCA")

Chase and Deutsche Bank's motion to dismiss the Saldivars' TDCA claim is granted, in part, and denied, in part. The Saldivars claim that Chase and Deutsche Bank violated several provisions of the TDCA, specifically the following sections of the Texas Finance Code:

1) § 392.301(a)(8) was violated because in the Notice of Default, Chase and Deutsche Bank threatened to accelerate and foreclose on the Saldivars' homestead. They assert that this was prohibited by law because the Notice of Default did not include the admonishment of the Saldivars "right to bring a court action to assert the non-existence of a default or any other defense of the borrower to acceleration and sale," which was required by the Security Instrument. Additionally, the Saldivars assert that acceleration and foreclosure were prohibited because Chase and Deutsche Bank are not holders or owners of the Note or Security Instrument.

2) § 392.303(a)(2) was violated because Chase and Deutsche Bank attempted to collect attorney's fees, double property taxes, and other fees and charges that were not authorized.

3) § 392.304(a)(4) was violated because the Notice of default lists Deutsche Bank as the creditor, when it is not, in fact the creditor.

4) § 392.304(a)(8) was violated because Chase and Deutsche Bank inflated the amount of the debt by including unauthorized fees and expenses; and misstated the character of the debt by misrepresenting that they were the owners or holders of the Note or Security Instrument.

---

[5] If the Saldivars and Chase both paid the 2011 property taxes, one of the parties should be reimbursed. However this double payment does not mean that the Saldivars have a claim against Chase for an inflated Proof of Claim.

5) § 392.304(a)(13) was violated because since the Saldivars' mortgage involved a home equity loan, any attorney's fees could only be collected if included in a judicially approved judgment.

Chase and Deutsche Bank's motion to dismiss is denied with respect to all of the Saldivars claims under the TDCA, except to the extent that their claims under § 392.303(a)(2) and § 392.304(a)(8) include claims for double property taxes and inflated inspection or appraisal fees, which the Court found *supra*, are not sufficiently pled.

### C. Real Estate Settlement Procedures Act ("RESPA")

Chase and Deutsche Bank's motion to dismiss the Saldivars' claims under RESPA is granted.

The Saldivars allege that Chase and Deutsche Bank violated RESPA and its implementing regulations by (1) charging sums in excess of the formula stated in the regulation, in violation of 12 C.F.R. § 1024.17(c)(ii); and, (2) failing to use the appropriate method to analyze the Saldivars' escrow account, in violation of 12 C.F.R. § 1024.17(d).

As discussed *supra*, the Saldivars assert that they directly paid property taxes in 2011 and that Chase's escrow analysis, attached to its Proof of Claim, is incorrect because it includes property taxes for 2011. Because Chase maintained an escrow account pursuant to the Saldivars' Deed of Trust, the Saldivars do not have a claim against Chase for properly escrowed property taxes paid for 2011.

### Conclusion

The Court will enter an order consistent with this Memorandum Opinion.

SIGNED **June 5, 2013.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE